IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LT. GARY SMITH,

                    Plaintiff,

vs.                                                No. CIV 00-1098  JC/LFG-ACE

THE UNITED STATES OF AMERICA;
THE DEPARTMENT OF ENERGY;
THE DEPARTMENT OF THE ARMY;
and STAR MOUNTAIN, INC.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL REPORT OF BRUCE F. MALOTT, CPA

       THIS MATTER comes before the Court on Defendants' Motion to Strike Plaintiff's Expert Witness Supplemental Report of Bruce F. Malott, CPA [Doc. 45], filed April 13, 2001.  Plaintiff Lt. Gary Smith ("Smith") filed a response on May 2, 2001.  No reply is necessary.  Oral argument is not required, as this matter may be decided on the briefs.

### Background

       In accord with the District's Civil Justice Expense and Delay Reduction Plan, promulgated under the Civil Justice Reform Act ("CJRA"), 28 U.S.C. § 471 *et seq.*, the Court conducted a scheduling conference and entered its Initial Scheduling Order [Doc. 22] on October 24, 2000, setting a deadline of December 15, 2000 for submission of Plaintiff's expert witness reports pursuant to Fed. R. Civ. P. 26(a)(2)(B).   The initial scheduling conference was conducted pursuant to Fed. R. Civ. P. 16 for the purpose of developing a case management plan, calculated to bring the case to a conclusion within the time specified by the Civil Justice Expense and Delay Reduction Plan.  The case

management plan proposed was intended to accomplish the dual goals of the CJRA, which are to expedite disposition of the case and lessen the financial burdens of litigation.

The parties were given deadlines within which to complete discovery, disclose evidence, disclose experts, provide expert reports and file dispositive motions. As noted above, Smith was to identify his experts and submit their reports by December 15, 2000. Defendants' deadline for submission of expert witness reports was January 15, 2001. These dates were confirmed in the Initial Pretrial Order [Doc. 25], filed October 30, 2000.

On December 15, 2000, the day of his deadline, Smith submitted the expert report of Bruce F. Malott, CPA ("Malott"). He was identified as an expert witness who would testify:

> concern[ing] economic damages. Specifically, it is anticipated that Mr. Malott will rely on the testimony of other factual witnesses concerning the amounts of any future damages. He will testify as to the appropriate calculations to discount such future damages to present value. Mr. Malott may also testify concerning calculations of any lost wages, impairment of earning capacity or household services.

Plaintiff's Expert Witness Disclosures [Doc. 28], at 1-2.

In the report, also submitted on the deadline date, Malott stated that he had been retained to: (1) "conduct present value analyses on amounts of damages to be realized by Smith in the future as identified by the evidence presented to the Court"; (2) calculate the present value of household services to be procured by Smith is the future, necessitated by his disability; and (3) respond to reports of any expert witnesses retained by Defendants. Malott stated further:

> The following information and conclusions are based on information provided by Plaintiff's counsel. In preparing this report, I have reviewed the Complaint and the tax returns of Mr. Smith. I anticipate significant additional documents – testimony and opinions of experts will be produced after the date of this report. Based on that fact, I reserve the right to later modify the opinions expressed in this report

2

to accommodate the results of further review of additional documentary evidence and relevant testimonial evidence . . . I have been instructed to assume that, as a result of his injury as described above, Lt. Smith will continue to incur damage in the future, the specific elements, amounts and durations of which are the subject of additional testimony. When the expert testimony as to such damages is presented, I have been engaged to perform calculations to reduce these to "present value."

[Doc. 45, Ex. A, at 1-3].

Defendants contend that Malott did not in fact render any opinion on the present value of damages to be incurred by Smith in the future; rather, he set out in the report nothing more than a method for calculating any such damages as might be identified in later evidence. Defendants assert that Malott's report did not meet the requirements of Rule 26(a)(2)(B) in that he "did not use any actual financial records of Plaintiff, did not rely upon any specific allegations that Plaintiff had in fact suffered a future loss of earning capacity, and did not present any estimate whatsoever of the present value of Plaintiff's future economic damages."

In addition, Defendants argue, Malott's report did not satisfy the Rule 26 requirements with regard to damages for household expenses, in that he merely indicated how he would calculate these damages "in the abstract" but provided no basis for his opinion in terms of Smith's alleged incapacities or details of what his household needs are expected to be. Defendants state that, based on the "nebulousness" of the Malott report with regard to both categories of damages (future economic loss and future expenses for household services), they elected not to retain their own economist and further determined that Malott's deposition need not be taken, since "Mr. Malott's report said in essence nothing of any relevance to the actual issue of damages."

After requesting an extension of the original discovery period and receiving the Court's

permission to extend the deadline to April 16, 2001, Smith noticed a number of depositions for the week preceding that deadline.   On April 9, 2001, Smith's attorney faxed the supplemental expert report of Malott to counsel for Defendants.  The new report contained material not encompassed by the original report, including a calculation of future wages and pension benefits lost by Smith when, in January, he was forced to reject an offer of promotion to the rank of captain.

The Court agrees that the original expert report falls short of the requirements of Rule 26 insofar as it relates to future economic damages, although it is adequate on the issue of future household services.  However, with regard to damages for Smith's loss of a specific opportunity for promotion, the supplemental report relies on information not available at the time of the initial report, and the Court will therefore deny Defendants' request to strike the supplemental report on the issue of lost wages and pension benefits due to the missed opportunity for promotion.  The trial testimony of Plaintiff's expert on the issue of household services will be restricted to information contained in the initial report.  Although Smith alludes in his brief to damages based on future medical expenses, there was no mention of medical expenses in either of Malott's reports, and he therefore may not testify on this subject.  Defendants will be given additional time to retain an expert of their own, if they wish, and to submit a Rule 26 expert report on the damages issues involving loss of promotion and loss of household services, and the parties will also be given a brief extension for any further discovery necessitated by this ruling, as detailed below.

## Discussion

In his first expert report, Malott described the method he would use to discount to present value any future economic damages such as loss of earnings, if and when the evidence supports such a loss.  The only opinion he provides in the initial report is related to the appropriate discount rate

4

which should be applied in such calculations.  The report otherwise fails to contain a complete statement of all opinions to be expressed and the basis for the opinions, and discloses no data considered in formulating the report.  This is insufficient to give Defendants notice of the basis for his opinion, and it violates the initial disclosure requirements of Rule 26(a)(2)(B).  <u>Tomlin v. Holecek</u>, 158 F.R.D. 132, 133 & n.2  (D. Minn. 1994) ("Plaintiff's generalized expert disclosures were insufficient ... if a prospective expert witness is expected to express an opinion, that opinion must be expressly disclosed, and the facts or other grounds for the opinion must be delineated") (internal punctuation omitted); <u>Indiana Ins. Co. v. Hussey Seating Co.</u>, 176 F.R.D. 291, 294-95 (D. Minn. 1997):

> There simply is no excuse for Plaintiff's untimely assessment of and disclosure of its personalty damages on a fair market value basis ... That Plaintiff may have turned over during discovery the documents supporting Smith's calculations, in addition to countless other documents, is irrelevant.  Rule 26 requires an expert witness to disclose his or her opinions and the bases for those opinions in a single report.

At the time the report was filed, Malott had formed no basis for evaluating Smith's future economic damages, aside from determining the method by which he would calculate them.  He had interviewed no witnesses, read no background information except the complaint and Smith's tax return, and performed no analysis in specific reference to this case.  He came to no conclusion.  Smith neither sought nor obtained an extension of time within which to comply with the  requirements of Rule 26, nor did he seek or obtain a modification of the Court's scheduling order.  He never alerted the Court to any delays in gathering data or other circumstances that would prevent compliance with the Court's directives and case management plan.

The mandatory disclosure obligations are intended to further the salutary purposes of the

CJRA.  Advance knowledge of an opponent's proof on a claim or defense is an invaluable aid in deciding whether to settle or litigate.  If a party is better able to evaluate the strength and weakness of the case, settlement is more likely.  And if the case is one that must be tried, advance knowledge of the opponent's evidence assists in preparing to meet the proofs at trial.  The case can be presented more efficiently, expeditiously and economically, thus fulfilling the purpose of the CJRA.

Because Smith did not provide, in either report, any basis on which Defendants can analyze his position on future medical expenses, his expert will not be allowed to testify with regard to any such damages at trial.  In addition, the new calculations made in the second report with regard to household expenses were simply slipped in, with no reasons given why the calculations could not have been made in this manner in the first report.  However, in his initial report, Mallot did utilize specifics from Smith's situation in making his calculations, did state a definite opinion as to how much these damages should be, and did provide an explanation for the bases underlying his opinion.  The Court disagrees with Defendants' argument that Malott "simply indicated how he would calculate these damages in the abstract."  Malott, therefore, will be allowed to testify at trial on the issue of future expenses for household services; however, there was no basis for supplementation of his original opinion, and his testimony on this issue must reflect the opinion rendered in first, not the second, report.  *See*, Keener v. United States, 181 F.R.D. 639, 642 (D. Mont. 1998) ("Dr. Lyden's testimony at trial shall be limited to the opinions expressed in the initial disclosure ...").

The Court accepts Smith's contention that the April 9 report was properly submitted as a supplement to the original report, with regard to future economic damages for lost wages and job benefits.  Smith asserts that at the time the initial report was prepared, he had not been formally named as a candidate for promotion to the captain's position, and although it was true that Smith was

aware early in the litigation that his "promotional opportunities were potentially compromised due

to his injury," his expert would have had no basis in December 2000 for assuming and including in

his calculations this specific job offer and these specific lost wages and pension benefits.

A party may not file a "supplement" intended only to deepen or strengthen its expert's prior

report.

> Fed. R. Civ. P. 26(a)(2)(B) requires that an expert witness report
> "contain a complete statement of all opinions to be expressed and the
> basis and reasons therefor" to facilitate discovery. Although Fed. R.
> Civ. P. 26(e) requires a party to "supplement or correct" disclosure
> upon information later acquired, that provision does not give license
> to sandbag one's opponent with claims and issues which should have
> been included in the expert witness's report (indeed, the lawsuit) from
> the outset.

Resolution Trust Corp. v. Gregory, No. Civ. 94-0052, slip op. (D.N.M. Dec. 13, 1995).  To allow

a party to "supplement" an expert report, in the absence of new information or changed

circumstances, would be to nullify the time limits imposed by the Rules and by the Court.

Notwithstanding the Court's directive to file expert reports by a date certain, a party could file an

incomplete document and, at its leisure, file a comprehensive report at a later date.  The party who

is entitled to know the opponent's expert's opinion would, to paraphrase Judge Kelly's words, be

"sandbagged."  The Court's case management plan would be thwarted and the goals of the CJRA

would never be met.  The diligent opponent who complied with the Court's order would be penalized

in favor of an unresponsive party.  That result is unfair.

On the other hand, Rule 26 requires that a party supplement earlier disclosures "to include

information thereafter acquired," or when the party learns that the earlier information is inaccurate

or incomplete.  Fed. R. Civ. P. 26(e); Keener, at 640.  Here, the promotion offer, and Smith's

rejection of the offer on grounds he was physically unable to take it, occurred in January 2001, sometime after the initial disclosures were made. The factual and financial basis for Malott's opinion that Smith's damages for lost wages and pension benefits amount to $67,016 reduced to present value, is clear from the supplemental report and includes information that was not in existence in December 2000. Therefore, the second report was properly submitted as a supplement to the first, on the sole issue of damages resulting from lost wages and benefits due to the lost promotion.

The Court notes that Smith could have submitted this supplemental report much earlier than he did, as the promotion offer was turned down in January and the new report was not served until April 9. Although the Court could strike the second report in its entirety as a sanction for Smith's dilatory actions and for the inadequacy of the first report under the rules of civil procedure, the Court in its discretion declines to do so. Additional time will be granted for submission of Defendants' expert report and for any necessary discovery arising as a result of this ruling. Although this extension begins to bump up against looming trial and pretrial conference dates, this resolution takes into account the interests of all parties.

IT IS THEREFORE ORDERED that Defendants' Motion to Strike Plaintiff's Expert Witness Supplemental Report [Doc. 45] is granted in part and denied in part, as follows:

1. Malott's opinion as to future household expenses, as reflected in the supplemental Expert Witness Report served on Defendants April 9, 2001, is stricken;

2. Malott may nevertheless testify at trial as to his opinion regarding future household expenses, as reflected in the initial Expert Witness Report served on Defendants December 15, 2000;

3. Malott may not testify at trial regarding damages for future medical expenses;

4. Malott may testify at trial as to damages based on Smith's inability to accept the January 2001 offer of promotion to captain;

IT IS FURTHER ORDERED that Defendants will have until June 14, 2001 to submit their expert witness report, if any, limited to the issues of damages for lost wages and benefits resulting from the rejected offer of a captaincy, and household expenses; and

IT IS FURTHER ORDERED that the parties will have until June 28, 2001 to conduct any expert discovery necessitated by the late naming of experts on these issues.  This extended discovery period is not intended to allow any general discovery, but is limited to depositions required of the parties' experts.  No other case management deadlines are modified.

Lorenzo F. Garcia
United States Magistrate Judge